UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ALVARADO,

    Plaintiff,

v.

OAKLAND COUNTY, OAKLAND
COUNTY SHERIFF'S DEPARTMENT
and DEPUTY MICKY SIMKINSON,
in his individual capacity,

    Defendants.

_____/

Case Number: 2:09-cv-14312

Paul D. Borman
United States District Court

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Defendants Oakland County (the "County") and Deputy Micky Simpkinson's ("Simpkinson," collectively "Defendants") motion for summary judgment. (Dkt. No. 48.) Plaintiff Joseph Alvarado ("Alvarado" or "Plaintiff") has filed a response. (Dkt. No. 62.) Defendants have filed a reply. (Dkt. No. 67.) Oral arguments were heard on March 30, 2011. For the following reasons, the Court GRANTS Defendants' motion for partial summary judgment.

**I.**     **Background**

This action arises from Plaintiff's claim that Simpkinson used excessive force while arresting him on July 23, 2007. (Compl. 26.) On the night in question, Simpkinson was driving down Baldwin Road in Lake Orion in his marked Oakland County Sheriff's Department cruiser when he saw Plaintiff's vehicle turn into the Catalina Lounge at a little after 1:00 am. (Dkt. No. 46,

1

Plaintiff's Motion *in Limine* to Exclude Evidence at Trial, Ex. A - DVD of video recorded by Simpkinson's in-car camera ("DVD").)  Simpkinson followed Plaintiff into the Lounge's parking lot and turned on his overhead lights and spotlight to pull Plaintiff's vehicle over for questioning at 1:07 am.  (*Id.*)  Simpkinson followed Plaintiff into the lot because he thought it was suspicious that a car would pull into the parking lot of a bar that was closed at 1:00 am on a Monday morning.  (Defs.' Br. in Supp. of Mot. for Summ. J., Ex. C - Deposition of Deputy Micky Simpkinson 62:14-16, Apr. 29, 2010.)

At this time, Plaintiff pulled back out onto Baldwin.  With Simpkinson in pursuit with his overhead lights flashing and using his siren Plaintiff did not pull over and stop.  Instead, Plaintiff turned into a subdivision, made a U-turn around a lane-divider, came out of the subdivision and turned right onto Baldwin again, before finally pulling his car into a Shell gas station.  (DVD at 1:09:08.)  During this approximately one-half mile pursuit, Simpkinson observed Plaintiff commit several traffic violations including: failure to signal, crossing into the center lane, and making a left hand turn from the right lane.  (Defs.' Br. 2-3.)  Simpkinson followed Plaintiff's vehicle into the Shell parking lot.

As Simpkinson prepared to approach the Plaintiff's car, Alvarado and his passenger both attempted to leave the vehicle on separate occasions.  (*Id.* at 3.)  Both times, Simpkinson ordered them to remain in the car, which they did.  (*Id.*)  Simpkinson began to approach the car with his gun drawn, but after Alvarado and his passenger obeyed his command to show him their hands, he holstered it.  (*Id.*)  The passenger had his hands on the ceiling while Plaintiff's hands were on the steering wheel.  (*Id.*)

The two parties offer very different versions of what happened next.[1] The entire scenario is contained in the Defendant's videotape which has been provided to Plaintiff and the Court.

Defendants claim that as Simpkinson approach the vehicle, he repeatedly gave Plaintiff verbal commands to exit the vehicle. (*Id.*) When Plaintiff did not comply, Simpkinson claims that he opened the driver's side door and grabbed Alvarado's left arm while continuing to order him to exit the vehicle. (*Id.* at 3-4.) Defendants claim that Plaintiff physically resisted Simpkinson by tightening his grip on the steering wheel and refusing to exit the car. (*Id.* at 4.) As a result, Simpkinson was forced to physically remove Plaintiff from the car. Defendants claim that Plaintiff "fell to the ground when exiting the vehicle." (*Id.*) He was then placed under physical control, handcuffed by Simpkinson, and placed in the squad car.

Plaintiff claims that as soon as Simpkinson reached the driver's side door, he reached in and forcefully yanked Plaintiff out of the car, throwing him to the ground. (Pl.'s Resp. 2.) Simpkinson allegedly then "wrenched Mr. Alvarado into a set of handcuffs, the force of which caused severe pain and numbness in [his] hands." (*Id.*) These factual differences, however, are not relevant to this motion which does not address Plaintiff's excessive force claim against Simpkinson.

After being handcuffed and placed in the patrol car for approximately twenty minutes, Plaintiff informed Simpkinson that his left hand was falling asleep. (DVD at 1:32.) Up until this point, Plaintiff had not complained of any pain, appeared calm, and repeatedly asked Simpkinson if he could just go home. When Simpkinson responded to Plaintiff's complaint and went to adjust the cuffs, Plaintiff started indicating he was in pain.

---

[1] Simpkinson claims he forgot to turn on the microphone he is supposed to wear/activate when conducting traffic stops. As a result, there is no audio on the video until after Plaintiff is handcuffed and being placed into Simpkinson's squad car.

3

Plaintiff first told Simpkinson that he was hurt at 1:35 a.m. (*Id.* at 1:35.) Plaintiff was lying on his back in the car after Simpkinson loosened the cuffs. For the next several minutes Plaintiff alternated between sobbing, screaming, and pleading "please sir, please"[2] to Simpkinson. Simpkinson seemed to believe the problem was that Plaintiff was putting pressure on the cuffs by lying on his back, so he told him to sit up.

At 1:42, Plaintiff first mentions that his arms hurt. (*Id.* at 1:42.) He basically just screamed "my arms . . ." while grunting and wincing in pain. At this point, Simpkinson gets out of the front seat and helps Plaintiff position himself so that he is sitting up in the car. (*Id.* at 1:42-43.) Simpkinson tells Plaintiff "see that's your problem, you're laying on [the handcuffs]," "you can't lean on them alright?" (*Id.*) Plaintiff repeatedly says that he cannot feel his hands, and continues to sob, plead, and scream in pain. At no point, however, does Plaintiff ask for medical assistance or to be taken to the hospital. (Defs.' Br. Ex. G - Deposition of Joseph Alvarado 67:24-68:1, Apr. 22, 2010.) However, Plaintiff did ask Simpkinson several times to "lighten this up" – apparently referring to his handcuffs. (DVD at 1:46-47; 1:48; 1:49.) Simpkinson assured Plaintiff that the cuffs were not tight, and that he had room to fit two fingers between the cuffs and Plaintiff's wrist. (*Id.* at 1:42.) Simpkinson headed to the hospital at 1:49, and arrived at 1:58 a.m.

Plaintiff brings this action under 42 U.S.C. § 1983, which provides plaintiffs with a federal cause of action against state or local officials who deprive them of a federal right while acting under the color of state law.[3] Plaintiff alleges that Simpkinson's actions during his arrest amounted to the

---

[2] Plaintiff never actually makes a specific request when he pleads "please sir, please." Later, he asks Simpkinson to "lighten this up." (DVD at 1:47.)

[3] Plaintiff also claimed that Simpkinson violated his right to be free from illegal detention, arrest, incarceration, and prosecution (Compl.¶ 38(a)), but this Court dismissed that

4

use of excessive force, which violated his Constitutional rights under the Fourth Amendment to be free from unreasonable seizures. *See Graham v. Connor*, 490 U.S 396 (1989).

Plaintiff also alleges that Simpkinson was deliberately indifferent to his serious medical needs after he was arrested, in violation of the Eight Amendment's prohibition of the wanton and unnecessary infliction of pain as punishment. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Defendants have only moved for summary judgment on Plaintiff's deliberate indifference claim against Simpkinson. (Defs.' Br. 16.)

## II. Standard of Review

Summary judgment is only appropriate if there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). When applying this standard, courts must view all materials, including all of the pleadings, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the responsibility of establishing no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the

---

claim with prejudice at the request of the parties. (Dkt. No. 49.) Additionally, Plaintiff originally brought a § 1983 claim against the County alleging that its custom policy, custom, or practice of failing to properly hire, supervise, train, monitor and discipline officers who use excessive force caused the Constitutional deprivations described above. (Compl. ¶ 44.) At oral argument the parties asked the Court to dismiss that claim with prejudice and dismiss the County from this action, which the Court did. (Dkt. No. 69.)

non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *Id.* at 324. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant probative evidence the issue exists in order to defeat a motion for summary judgment. *See Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

**III.    Discussion**

    **A.    Plaintiff Has Failed to Show a Genuine Issue of Material Fact Exists Regarding Whether Simpkinson Was Deliberately Indifferent to Plaintiff's Serious Medical Needs**

A state official's deliberate indifference to a substantial risk of serious harm violates the Eight Amendment's prohibition on the wanton infliction of pain as punishment. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994). Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. The test for determining whether an officer was deliberately indifferent has both a subjective and an objective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The objective component is satisfied if the plaintiff alleges that the medical need at issue is sufficiently serious. *Id.* at 702-03 (quoting *Farmer*, 511 U.S. at 834). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004).

To satisfy the subjective criterion, the plaintiff must demonstrate that "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. It is not

enough for the plaintiff to allege that the officer should have recognized a serious medical risk existed. *See Farmer*, 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). The United States Supreme Court has said that recklessly disregarding a known medical risk satisfies this requirement. *Id.* at 839-40. Although the subjective component requires a finding of something more blameworthy than negligence, "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result" *Id.* at 835. An official "who actually knew of a substantial risk to inmate health or safety may be found free form liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844; *see also Comstock*, 273 F.3d at 706; *Harrison v. Ash, Co.*, 539 F.3d 510, 519 (6th Cir. 2008) ("Oke reasonably responded to Jones' serious medical needs by contacting the nursing staff . . . . Consequently, Oke is entitled to qualified immunity.").

A court may hold that an officer is not liable for deliberate indifference even if he recognizes that the plaintiff is in pain and tries to accommodate him but ultimately fails to identify a more serious medical problem. *See, e.g.*, *Tapp v. Banks*, 1 Fed. Appx. 344, 352-53 (6th Cir. 2001). In *Tapp*, the plaintiff Eric Tapp brought claims for excessive force and deliberate indifference against his arresting officer, David Banks. *Id.* at 345. Banks arrested Tapp after a forty-five minute high-speed chase. *Id.* at 346. During the arrest Banks hit Tapp severally times in the knee with his flashlight. *Id.* at 346-47. After Tapp was arrested, he was taken to the hospital to be examined. *Id.* at 348. He remained in jail for approximately twenty days before being transferred to another hospital where he was diagnosed with bi-polar disorder. *Id.* Several days later, while still at the

second hospital, it was discovered that Tapp had a fractured patella. *Id.*

The district court granted the defendants' motion for summary judgment on all of Tapp's claims. *Id.* The Sixth Circuit reversed the lower court's ruling on the excessive force claim, but affirmed the district court's holding with respect to Tapp's deliberate indifference claim. *Id.* at 353. Even though the jail officials recognized that Tapp had hurt his leg, the court held that they did not identify and disregard the full extent of his injuries. *See id.* at 352 ("While Feltner gave crutches to Tapp because there was something wrong with Tapp's leg . . . Feltner's actions are not indicative that the jail personnel had reason to believe that Tapp's patella was broken; instead they merely indicate that Tapp was in pain and Feltner attempted to accommodate him."). The court found that its decision was reinforced by the fact that the jailors could not have inferred the seriousness of Tapp's knee injury, in part, because Tapp's knee was not visible to them. *Id.* ("[T]he condition of Tapp's knee was not visible to the jail defendants, and thus they could not have inferred the seriousness of his injury."). Furthermore, Tapp never requested or sought medical assistance. *Id.* at 353.

The court rejected the plaintiff's argument that his mother told a deputy at the jail that Tapp needed medical assistance and that the defendants' decision to ignore that request amounted to deliberate indifference. *Id.* at 352. The court found that "the jail defendants provided Tapp with prompt medical assistance after such assistance was requested" because two days after the plaintiff's mother asked for treatment he was taken to the hospital. *Id.*

In the instant case, Plaintiff has not demonstrated a genuine issue of material fact exists regarding whether Simpkinson was deliberately indifferent to his serious medical needs. Even assuming *arguendo* that his separated shoulder constituted a serious medical risk or need, an

8

objective review of Simpkinson's in-car DVD recording shows that Plaintiff has not alleged facts that satisfy the subject component of the deliberate indifferent test.[4]

Plaintiff was handcuffed and placed in Simpkinson's cruiser at 1:12 am. When the microphone was turned on at 1:13, Plaintiff can be heard cursing to himself. At 1:31, Plaintiff told Simpkinson that his hand was falling asleep. Up until that point, Plaintiff talked normally, appeared calm, and repeatedly asked to be allowed to go home. After Plaintiff mentioned his hand was falling asleep, Simpkinson said he would readjust them, which he started to do at 1:34.

The first evidence that Plaintiff was hurt appears when Simpkinson adjusted his handcuffs. Plaintiff said "ow," grunts a bit, and swears. Plaintiff first stated that he was in pain at 1:35 am, saying his hands hurt just before Simpkinson adjusted them. Simpkinson responded and finished adjusting Plaintiff's handcuffs at 1:36. Plaintiff told Simpkinson that his left hand was numb; Simpkinson assured him that the cuffs were not tight because there was space to fit two fingers between them. At 1:37, Simpkinson said "well that's the problem, don't lean on them" because Plaintiff was at this time lying on his back in the patrol car.

At 1:38 Simpkinson went to try to help Plaintiff sit up, he opened the door and started lifting him. Simpkinson believed that Plaintiff was not trying to sit up, so he went back to filling out his report. Over the next several minutes, Plaintiff clearly indicated that he was in pain, interchanging between pleas, sobs, grunts and screams. He also repeatedly told Simpkinson that his left hand was numb.

At 1:42 Plaintiff first mentioned his arms. He basically just screamed "my arms . . ." while

---

[4] The following facts all come from this recording (Dkt. No. 46, Ex. A) and therefore will not be cited to individually.

9

grunting and wincing in pain. At this point, Simpkinson again responded, and reopened the back-seat door to try to lift Plaintiff to help him sit up. It is clear that Simpkinson believed that Plaintiff was experiencing pain because he was lying on his back, and as a result the cuffs were digging into his wrists. After helping him up, Simpkinson said "see that's your problem, you're laying on them." Again he reassured Plaintiff that the cuffs are not too tight and told him "you're fine," "you can't lean on them alright?" Plaintiff, however, continued to scream, sob, and plea "please sir, please."

Plaintiff again said that he could not feel his left hand at 1:44. Simpkinson told him that he is going to be alright and that he is going to take him to the hospital in a minute (which he was planning on doing anyways to get his blood alcohol content measured). Plaintiff repeatedly said "please, please," and several times asked Simpkinson to "lighten up this," seemingly referring to his handcuffs' tightness, which Simpkinson had responded to on two occasions. At 1:48, Plaintiff said "I know I'm under arrest," "but I can't feel nothing." Simpkinson, again, told him that they are going to the hospital. They left for the hospital at 1:49.

On the way, Plaintiff says "my hand is dead" at 1:50-51. Simpkinson told Plaintiff that the cuffs are not too light because he was able to get two fingers in between them and his wrists. Again, Simpkinson told him not to lean back on his handcuffs. Plaintiff continued to indicate he was in pain. Simpkinson told him to try to relax and informed him that they will be at the hospital in three minutes. Plaintiff was relatively quiet for about a minute and a half, but then again began to sob, scream, and plead. Plaintiff claimed that his "whole arm is gone" at 1:56. Simpkinson told him they're almost at the hospital. At 1:57, there is more screaming, and Simpkinson says he's trying to get him there as soon as possible. They arrived at the hospital at 1:58. It was later discovered that Plaintiff had a separated shoulder.

Although it is clear that Plaintiff was in pain, there is simply nothing to show that Simpkinson inferred that Plaintiff's shoulder was separated or that he disregarded the risk Plaintiff's injury presented to him. First, Plaintiff never requested medical assistance, or to be taken to the hospital. (Alvarado Dep. 67:24-68:1.) Next, even assuming that there were visible signs of Plaintiff's injury, they would not have been visible to Simpkinson because he was wearing a shirt. *See Tapp*, 1 Fed. Appx. 352. Finally, Simpkinson testified that he was never aware that Plaintiff had hurt his shoulder during the arrest, and only became aware that he did at the hospital. (Simpkinson Dep. 165:1-8.) Plaintiff has failed to put forth any facts that refute this claim.

If anything, the evidence reinforces Simpkinson's claim that he did not subjectively believe that Plaintiff had a serious medical need. Plaintiff himself testified that he did not know he had a separated shoulder. (Alvarado Dep. 65:15-20.) Plaintiff repeatedly complained that his hand was numb, but the only request he made before they started for the hospital was for Simpkinson to "lighten this up" – an apparent reference to his handcuffs. It is clear that Simpkinson at first believed that the handcuffs might have been too tight, so he loosened them. Plaintiff himself admitted that he too believed this was the problem, testifying "at the time I thought that the handcuffs were too tight." (Alvarado Dep. 65:19-20.)

Although Plaintiff continued to indicate he was in pain, the video demonstrates that Simpkinson believed he was still in pain because he was putting pressure on the cuffs when he was lying on his back in the squad car. Simpkinson repeatedly told Plaintiff not to press against his wrists and to sit up. He also reassured him several times that the cuffs were not too tight. Simpkinson also directly responded to Plaintiff by, on two occasions, opening the back door and readjusting the handcuffs, and lifting up Plaintiff in his seat. These facts demonstrate that there is

11

no issue of material fact as to whether Simpkinson subjectively appreciated that Plaintiff had a serious medical need because his shoulder was separated.

Even if the Court believed that this was not the case, summary judgment for Simpkinson would still be appropriate because he acted reasonably in response to whatever serious medical need Plaintiff might have had. The video shows that Plaintiff first stated he was in pain at 1:35 am (although he had earlier said his hand was falling asleep). Simpkinson left for the hospital at 1:49; merely fourteen minutes later. The Eighth Amendment does not subject state officials to liability for taking fourteen minutes to assess and respond to the situation of a complaining arrestee who has not asked for medical treatment and has not demonstrated any serious symptoms such as heavy blood loss, heart attack, seizure, fainting, or vomiting. The Court holds that Simpkinson was not deliberately indifferent as a matter of law. Accordingly, his motion for summary judgment is GRANTED.

## IV.    Conclusion

For the reasons stated above, Defendants' motion for partial summary judgment with respect to Plaintiff's deliberate indifference claim is GRANTED.

**SO ORDERED.**

S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated:  April 14, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 14, 2011.

                                              S/Denise Goodine
                                              Case Manager