UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ALVARADO,

       Plaintiff,                            Case Number: 2:09-cv-14312

v.                                      Paul D. Borman
                                        United States District Court

OAKLAND COUNTY, OAKLAND
COUNTY SHERIFF'S DEPARTMENT
and DEPUTY MICKY SIMKINSON,
in his individual capacity,

       Defendants.

_____/

OPINION AND ORDER
(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL (DKT. NO. 39);
(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
PRECLUDE PLAINTIFF FROM OFFERING THE EXPERT OPINIONS OF
MICHAEL D. LYMAN AT TRIAL (DKT. NO. 57); AND
(3) DEFERRING, UNTIL THE CONCLUSION OF THE LIABILITY PHASE OF TRIAL,
RULING ON DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM OFFERING
THE EXPERT OPINIONS OF JOHN SASE AT TRIAL (DKT. NO. 46)

       This matter comes before the Court on Plaintiff's Motion *In Limine* to Exclude Evidence at

Trial (Dkt. No. 39), Defendants' Motion to Preclude Plaintiff from Offering the Expert Opinions of

Michael D. Lyman, Ph.D at Trial (Dkt. No. 57) and Defendants' Motion to Preclude Plaintiff from

Offering the Expert Opinions of John Sase, Ph.D at Trial (Dkt. No. 46).  A hearing was held on

August 1, 2011.

       For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART

Plaintiff's motion *in limine*, GRANTS IN PART AND DENIES IN PART Defendants' motion to

preclude Plaintiff from offering the expert opinions of Dr. Lyman at trial, and DEFERS RULING,

until the conclusion of the liability phase of trial, on Defendants' motion to preclude Plaintiff from offering the expert opinions of Dr. Sase at trial.

## I.      INTRODUCTION

Plaintiff in this action claims that Defendant Oakland County Deputy Micky Simpkinson used excessive force when he pulled Plaintiff from his vehicle and took him to the ground during a traffic stop on July 23, 2007.  The facts in this matter are set forth in detail in this Court's April 14, 2011 Opinion and Order which granted Defendants' motion for partial summary judgment, leaving for trial only Plaintiff's excessive force (Count I), assault (Count III) and battery (Count IV) claims against Deputy Simpkinson.[1]  (Dkt. No. 70.)  In summary as relevant here, Plaintiff claims that Deputy Simpkinson used excessive force in removing Plaintiff from his vehicle, causing Plaintiff to suffer a separated shoulder, a labral tear and a torn rotator cuff, all of which required repeated surgeries and ultimately forced Plaintiff to take early retirement from his job at General Motors, resulting in economic and non-economic damages.  Deputy Simpkinson responds that Plaintiff ignored his repeated and continuous efforts to stop Plaintiff's vehicle through the use of overhead lights, flashing lights and sirens.  Deputy Simpkinson contends that Plaintiff attempted to elude the stop for over one-half mile after Deputy Simpkinson first attempted to pull Plaintiff over, before finally bringing his vehicle to a stop.  Thus, when Plaintiff finally stopped his vehicle and Deputy Simpkinson approached the vehicle, he did so cautiously, with his weapon drawn, until he could clearly ascertain that neither Plaintiff nor his passenger posed an immediate threat.  Deputy

---

[1] The Oakland County Sheriff's Department was dismissed with prejudice by stipulation of the parties.  (Dkt. No. 8, Stipulation and Order of Dismissal for Defendant Oakland County Sheriff's Department Only.)  At oral argument on Defendants' motion for partial summary judgment, Plaintiff dismissed with prejudice his claim against Oakland County.  (Dkt. No. 70, April 14, 2011 Opinion and Order, 4 n.3.)

Simpkinson further responds that he used a reasonable amount of force, under the circumstances, in removing Plaintiff from his vehicle and placing him in handcuffs.  Both Plaintiff and Defendant have now filed motions *in limine* to exclude certain evidence at trial.

## II.    LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions *in limine* -in order to narrow the issues remaining for trial and to minimize disruptions at trial."  *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999).  District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.    ANALYSIS

### A.    Plaintiff's Motion *In Limine*

Plaintiff moves *in limine* to exclude several different categories of evidence.  In his motion, Plaintiff refers the Court to the standard for determining excessive force as the appropriate context in which to assess the admissibility of the challenged evidence.  "Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene."  *Miller v. Sanilac County*, 606 F.3d 240, 251 (6th Cir. 2010).  "'The question [the court] must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable.'"  *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007).

3

**1.      Deputy Simpkinson will be permitted to introduce evidence at trial relating to Plaintiff's arrest and conviction for OUIL Third on the evening of July 23, 2007, including evidence of his blood alcohol level that evening.**

Plaintiff seeks to exclude at trial evidence that Plaintiff was operating his vehicle while intoxicated on the night of his arrest by Deputy Simpkinson, that Plaintiff registered a blood alcohol level of .28 immediately following his arrest and was subsequently convicted of Operating Under the Influence of Intoxicating Liquors, Third Offense ("OUIL Third") and sentenced to 300 days in jail for that crime. (Dkt. No. 42, Def.'s Resp. to Pl.'s Motion In Limine, Ex. E, Plea Agreement, Ex. F, Judgment and Sentence). Plaintiff argues that allowing evidence of Plaintiff's conviction for driving while intoxicated that night will have no tendency to establish or disprove any fact of consequence in this case. Plaintiff claims that "without provocation or other justification, [Deputy Simpkinson] manhandled [Plaintiff] and threw him to the ground during a routine traffic stop." (Pl.'s Mot. 8.) Plaintiff claims that the only relevant evidence is what actually occurred during the stop and arrest.          Deputy Simpkinson, on the other hand, argues that on the evening in question, Plaintiff behaved suspiciously by driving slowly through an empty parking lot of a closed bar at 1 a.m. and then failed to obey Deputy Simpkinson's repeated and obvious signals to bring his vehicle to a stop. Plaintiff's elusive behavior lead Deputy Simpkinson to conclude that Plaintiff was attempting to flee or elude Deputy Simpkinson, driving erratically for over a half-mile and committing several traffic violations before finally heeding Deputy Simpkinson's signals and bringing his vehicle to a stop. When Deputy Simpkinson finally approached Plaintiff's vehicle, he did so cautiously and with his weapon drawn based on Plaintiff's suspicious and elusive behavior. While Deputy Simpkinson ultimately holstered his weapon before approaching Plaintiff's vehicle, it is his testimony that Plaintiff also ignored several commands to exit his vehicle. These are the

4

facts, as alleged by Deputy Simpkinson, that comprise the totality of the circumstances which he

faced at the time that he removed Plaintiff from his vehicle.  As Deputy Simpkinson testified:

> I don't know if during that half-mile they were on the phone, calling buddies, saying
> "Hey, I'm getting pulled over. I've got a warrant. Come and shoot this deputy in the
> head for me."  I don't have that information.  I don't have that luxury. I have to act,
> I have to do it now. That's what we do. I don't have that luxury.

(Def.'s Resp. Ex. C, Deposition of Micky Simpkinson, April 29, 2010, 92:14-21.)

The Court concludes that evidence relating to Plaintiff's arrest and conviction for operating

his vehicle while intoxicated on the evening of his arrest by Deputy Simpkinson, including evidence

of his blood alcohol level that night, is admissible for several reasons.  Plaintiff claims that Deputy

Simpkinson acted "without justification or provocation."   In determining whether Deputy

Simpkinson's actions were objectively reasonable in light of all the facts and circumstances

confronting him that evening, any fact which bears on Deputy Simpkinson's alleged "justification

or provocation" for pulling Plaintiff over and for removing him from his vehicle with a certain

amount of force, will be relevant to Deputy Simpkinson's claim that his conduct was reasonable

under the situation that he perceived.  In this regard, Plaintiff's intoxication that evening is an

important factor for the jury to consider on many levels.

First, evidence of  Plaintiff's intoxication at the time of his encounter with Deputy

Simpkinson, and specifically the level of his inebriation as determined by his blood alcohol level

immediately following the incident, bears on the credibility of Plaintiff's recall of events that

evening.  *See Grimes v. Mazda North American Operations*, 355 F.3d 566, 573 (6th Cir. 2004)

(affirming the district court's admission of evidence of alcohol or drug use by the driver of the

vehicle on the night of the accident which was "clearly relevant" as it "went to the credibility of her

testimony describing the accident"); *Townsend v. Benzie County*, No. 00-cv-482, 2002 U.S. Dist.

5

LEXIS 7072 at *4 (W.D. Mich. April 12, 2002) (finding that plaintiff's consumption of 16 beers on the day in question and his drinking and alcoholism generally were "directly relevant to his ability to perceive and recount the incidents of the day in question").

Second, evidence that Plaintiff was convicted of OUIL Third is relevant to dispute Plaintiff's contention that he was not aware that he had done anything wrong on the evening he was arrested by Deputy Simpkinson, that he did not realize that Deputy Simpkinson was signaling him to pull over and that he was cooperative and non-combative throughout the events of that evening. Plaintiff was familiar with the drill: he conceded in his deposition that, prior to July 23, 2007, he had been convicted of OUIL "five, six times, I'm not sure." (Pl.'s Resp. to Def.'s Motion *in Limine* to Exclude Dr. Lyman's trial testimony, Dkt. No. 61, Ex. B, Deposition of Joseph Alvarado, April 22, 2010, 36:2-8.) Defendants are entitled to demonstrate that Plaintiff, who admits only to drinking "a couple of shots and beers" with friends the evening of the accident in fact had a blood alcohol level of .28, was aware that drinking and driving with that amount of alcohol in his system was illegal and was or should have been aware that Deputy Simpkinson was attempting to pull him over. This evidence tends to substantiate Deputy Simpkinson's testimony that he perceived that Plaintiff was attempting to elude the stop and was less than cooperative and combative in resisting Deputy Simpkinson's signal for him to stop and to exit his vehicle.

Evidence of Plaintiff's intoxication and blood alcohol level that evening, as well as Plaintiff's ultimate conviction for OUIL Third, confirm the level of Plaintiff's intoxication, the severity of the offense, and support Deputy Simpkinson's perception that Plaintiff was attempting to avoid the stop. *See Greene v. Distelhorst*, 116 F.3d 1480, at *3 (6th Cir. 1997) (unpublished opinion) (table case) (holding that evidence of plaintiff's arrest and conviction for criminal activity

6

that was "part and parcel" of the incident at the heart of his § 1983 claim was admissible to demonstrate plaintiff's "motive to run, hide, and resist arrest").  Plaintiff conceded in his deposition that he was aware, at the time that Deputy Simpkinson pulled him over on July 23, 2007, that if he was arrested again for OUIL it would be "a pretty serious matter" in light of his previous convictions.  (Alvarado Dep. 39:12-16.)  The Court will exclude evidence, however, of the length of Plaintiff's sentence (300 days in jail), which may be relevant to the issue of damages but is not of significant probative value on the issue of liability.

Plaintiff argues that because the charge against him for fleeing and eluding was dropped as a result of his plea agreement on the OUIL Third charge, evidence of Plaintiff's motive to elude the stop that evening is irrelevant.  (Def.'s Resp. Exs. F, I, Judgment of Sentence and Criminal Complaint.)  The fact that the fleeing and eluding charge was dropped as a result of the plea agreement has no bearing on the reasonableness of Deputy Simpkinson's perception on the evening of Plaintiff's arrest that Plaintiff was attempting to elude the stop – perceptions which formed the basis for a criminal complaint that charged Plaintiff with fleeing and eluding Deputy Simpkinson's efforts to stop him.  (Dkt. No. 57, Def.'s Mot. to Exclude Lyman, Ex. B, Police Report charging Plaintiff with fleeing/eluding; Dkt No. 42, Def.'s Resp. to Motion to Exclude Evidence, Ex. I, Complaint describing fleeing charge as failure to stop when commanded to do so by a uniformed officer).  However, the parties agreed at oral argument that while Deputy Simpkinson would be permitted to testify to his perception that Plaintiff was attempting to flee and elude the stop that night, evidence that Plaintiff was actually charged with that crime, or that the charge was dropped in connection with Plaintiff's plea, will be excluded.  If, however, Deputy Simpkinson is asked if Plaintiff was ever actually convicted of fleeing and eluding, this will open the door to evidence that

7

Plaintiff was charged with that offense and that the charge was only dropped in connection with the plea agreement. The Court will be vigilant in monitoring this line of questioning at trial.

The video tape of the arrest will speak in part to Plaintiff's behavior, elusive or not, in response to Deputy Simpkinson's signals to Plaintiff to stop his vehicle the night of the arrest. But it would ignore the totality of the circumstances actually faced by Deputy Simpkinson that evening, and would deprive the jury of important probative facts, to exclude evidence of Plaintiff's actual state of intoxication that night and the fact that the conviction was for OUIL Third. It would be unfairly prejudicial to Deputy Simpkinson and misleading to the jury to permit a determination as to the reasonableness of Deputy Simpkinson's conduct without knowledge that, at the time of the incidents depicted on the tape and described by the various witnesses who will testify at trial, Plaintiff was driving his vehicle with a blood alcohol level of .28. This evidence is probative of Plaintiff's knowledge, motive and intent and is not more prejudicial than probative. It tends to support Deputy Simpkinson's claim that he acted reasonably under the circumstances and rebuts Plaintiff's claim that Deputy Simpkinson acted totally without justification or provocation. While perhaps prejudicial in this respect to Plaintiff's claims, it is not unfairly so. Often the most crucial evidence in a case results in prejudice of some kind to one side or the other. "Unfair prejudice means the *undue* tendency to suggest a decision on improper considerations; it does not mean the damage to a [] case that results from the legitimate probative force of the evidence." *Doe v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996) (emphasis in original).

Additionally, Deputy Simpkinson persuasively argues that Plaintiff's level of intoxication at the time of his arrest is probative of the Deputy Simpkinson's claim that Plaintiff was generally uncooperative and combative in delaying the traffic stop, refusing commands to exit the vehicle and

8

refusing to remove his hands from the steering wheel.

> **2.    Deputy Simpkinson will be permitted to introduce evidence regarding Plaintiff's prior alcohol related incidents, which are relevant to Plaintiff's knowledge of the consequences of being arrested for a fifth time while driving under the influence of alcohol and are also probative of Plaintiff's motive to attempt to elude Deputy Simpkinson.**

Deputy Simpkinson argues that evidence of alcohol related incidents that occurred prior to the July 23, 2007 traffic stop is admissible for many of the same reasons that the Court should admit evidence of Plaintiff's intoxication and conviction of OUIL Third the night of his arrest. In fact, evidence of Plaintiff's conviction for OUIL Third carries with it the express implication that Plaintiff has been arrested for driving while intoxicated on prior occasions. Deputy Simpkinson argues that specific evidence of prior alcohol related incidents is admissible: (1) to refute Plaintiff's claim that he lacked knowledge of, or was operating under a mistake as to, the fact that Deputy Simpkinson was trying to stop his vehicle and to refute his related claim that he did not believe he had violated any law (this being his "fifth or sixth" arrest for driving while impaired, Plaintiff was well aware of what was happening to him) and (2) to show that Plaintiff had a motive to flee or resist Deputy Simpkinson's commands to stop his vehicle to avoid yet another arrest and conviction for driving under the influence of alcohol (Plaintiff admitted his knowledge that another arrest for OUIL would be a serious matter ).[2]

---

[2] The cases cited by Plaintiff in his supplemental brief (Dkt. No. 77) are inapposite. The issue in this case is not whether Deputy Simpkinson was aware of Plaintiff's prior alcohol related offenses such that he may have been justified in reacting the way that he did under the circumstances he faced. The issue is whether evidence of Plaintiff's prior alcohol related offenses tends to discredit Plaintiff's claim that he had no knowledge that he was doing anything wrong and tends to support Deputy Simpkinson's perception that Plaintiff was attempting to elude arrest by establishing a motive on Plaintiff's part to do so. The evidence is not being offered to show that Plaintiff's behavior the night of his arrest conformed to his prior bad acts, i.e. that he was once again driving while intoxicated on the night of his arrest, but to show knowledge, motive and absence of mistake.

For the same reasons discussed above, the Court concludes that evidence of Plaintiff's prior alcohol related arrests are admissible to support Deputy Simpkinson's perception, which Plaintiff disputes, that Plaintiff was attempting to evade arrest on the evening of the incident and that Plaintiff's elusive behavior factored into Deputy Simpkinson's assessment of the totality of the circumstances at the time he stopped Plaintiff. *See Hernandez v. Albuquerque*, No. 02-0333, 2004 WL 3426418, at *3 (D.N.M. Jan. 2, 2004) (holding that evidence of the motor vehicle chase that preceded plaintiff's arrest was significant to the jury's determination of whether the officer's conduct in effecting the arrest was reasonable in light of all the facts and circumstances). Were the jury to question Deputy Simpkinson's perception that Plaintiff was attempting to flee, evidence of his motive to do so would tend to make that perception more credible.

Further, evidence of Plaintiff's prior alcohol related incidents tends to establish that Plaintiff knew exactly what was happening when he was about to be pulled over by Deputy Simpkinson as Plaintiff, by his own admission, had been arrested and convicted of driving while intoxicated "or similar offenses," on at least four prior occasions. (Pl.'s Mot. 10.) As discussed above, Plaintiff was uncomfortably familiar with the drill. Additionally, evidence of these of prior offenses tends to establish that Plaintiff was not operating under a mistaken assumption that he had not violated any laws on the evening of his arrest as he was well informed of the nature of the offense that he was committing that night. Deputy Simpkinson offers this evidence to prove Plaintiff's knowledge, motive and intent on the night of his arrest, which tends to refute Plaintiff's claim that he had no idea that Deputy Simpkinson was trying to pull him over and that he did not believe that he had violated any laws by driving while under the influence of alcohol. Were the jury to question Plaintiff's knowledge of whether Deputy Simpkinson was trying to pull him over, the fact that he had been

10

stopped under similar circumstances on several prior occasions would tend to discredit his contention that he had no idea that he was being signaled to stop his vehicle.

The Court concludes that evidence of the fact of Plaintiff's prior alcohol related arrests is relevant and is not offered for the prohibited purpose of proving that Plaintiff acted in conformity with prior alcohol related incidents. The evidence can be offered to prove Plaintiff's motive and knowledge, per Fed. R. Evid. 404(b), and is not unfairly prejudicial per Fed. R. Evid. 403.[3]

### 3.    The Court will exclude as irrelevant evidence that Plaintiff declined to take certain sobriety tests at the scene of his arrest.

Plaintiff seeks to exclude evidence that Plaintiff refused to take a Preliminary Breath Test (PBT), a field sobriety test or a Breathalyzer Test at the scene of the arrest. Deputy Simpkinson argued in his brief that this evidence was relevant to Plaintiff's now-dismissed deliberate indifference claim. (Def.'s Resp. 16-17.) That claim has now been dismissed and therefore the evidence is not admissible for that purpose. The Court concludes that evidence that Plaintiff refused certain sobriety tests is of marginal relevance to the issues that remain. The parties were unable to inform the Court at oral argument about Plaintiff's legal rights with respect to declining to take

---

[3] Deputy Simpkinson also argues that evidence of Plaintiff's conviction of OUIL on the evening of July 23, 2007 and prior alcohol related incidents (as well as evidence of his conviction for criminal sexual conduct) are admissible on the issue of damages. These arguments will be addressed in a separate ruling by the Court following a determination by the jury on the issue of liability. In summary, Plaintiff claims to be totally disabled from working in any capacity as a result of his shoulder injury and claims that he was unable to return to work at GM because of the injury and was forced to take early retirement, resulting in fewer benefits and total gross income than he would have received had he not been forced by the injury to take early retirement. Defendant responds that GM would not have accommodated Plaintiff's 300 day sentence for his July 23, 2007 arrest and subsequent conviction and would have fired Plaintiff and that this was the reason that Plaintiff took early retirement. Deputy Simpkinson argues that Plaintiff's conviction for CSC diminishes his employability and affects the amount that Plaintiff can claim as lost future earnings. These issues will be dealt with in more depth following a jury verdict as to liability.

certain tests. Moreover, any probative value of Plaintiff's continued uncooperative behavior after

the occurrence of the events that are the subject of his excessive force claim, even if relevant, is

outweighed by its potential for unfair prejudice . Therefore, the Court will grant Plaintiff's motion

to exclude evidence of these facts.

> **4.      The Court will exclude, at least during the liability phase of the trial, evidence of Plaintiff's 1992 conviction for criminal sexual conduct and his obligation as a condition of his probation to register as a sex offender.**

The parties stipulated at oral argument that this evidence is relevant, if at all, only to the issue

of damages and the Court will exclude this evidence during the liability phase of the trial.

> **B.      Deputy Simpkinson's Motion to Preclude Plaintiff from Offering the Expert Opinions of Michael D. Lyman, Ph.D at Trial**

Federal Rule of Evidence 704 provides in pertinent part: "[T]estimony in the form of an

opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue

to be decided by the trier of fact." However, as the Advisory Committee Notes to Rule 704 make

clear, the ultimate issue rule does not permit expert opinion testimony that opines on the ultimate

legal conclusion which the jury must reach in the case:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 Advisory Committee Note.

In sum, the expert's opinion must stop short of embracing the "legal terminology" which

frames the ultimate legal conclusion which the jury must reach in the case. *See Torres v. County of Oakland, et al.*, 758 F.2d 147, 151 (6th Cir. 1985). In *Torres*, the court concluded that a question posed to an expert, which inquired whether the plaintiff had been discriminated against because of her national origin, ran afoul of the rules of evidence because the question "track[ed] almost verbatim the language of the applicable statute" and the term "discrimination" had a specialized meaning in the law not commonly understood in its lay use. *Id*. "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Id*. at 150 (quoting *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir.), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983)).

In *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994), in the context of a § 1983 claim, the Sixth Circuit held that the district court erroneously admitted expert testimony opining that certain conduct by the defendant amounted to "deliberate indifference," which improperly expressed the ultimate legal conclusion at issue in the case. In *Berry*, the court cited the Second Circuit's decision, *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992), which held that expert testimony on the use of excessive force which embraced the ultimate legal conclusion in the case should have been excluded by the trial court. The expert in *Hygh* was permitted to opine at trial that the defendant's use of a baton to strike a person in the head was unjustified deadly physical force under the circumstances of the case. 961 F.2d at 363. Quoting the following passage from *Hygh*, the Sixth Circuit in *Berry* excluded expert opinion as to "deliberate indifference:"

> Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard-explicit or implicit-to the jury. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with

13

the judge in the function of instructing the jury. . . .

. . .

> Far more troubling, [the expert] testified that Jacobs' conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper." We have held that an expert's testimony that a defendant was "negligent" should not have been allowed. We see no significant distinction in [the expert's] conclusory condemnations of Jacobs' actions here, which, in the language of the advisory committee, "merely [told] the jury what result to reach."

25 F.3d at 1354 (quoting *Hygh*, 961 F.2d at 364) (internal citations and parenthetical information omitted).

*DeMerrell v. City of Cheboygan*, 206 F. App'x 418 (6th Cir. 2006), although an unpublished opinion, provides this Court with some helpful guidance on this issue. In *DeMerrell*, the Sixth Circuit, relying on *Berry*, held that expert opinion testimony that expressed a legal conclusion was properly excluded by the district court, explaining:

> In the instant case, Plaintiff–Appellant's expert testified as to a legal conclusion because he stated that "it was objectively unreasonable for Officer White to shoot Mr. DeMerrell." (JA 430). As stated previously, objective reasonableness is the precise legal standard of *Graham* to be used in the qualified immunity inquiry of *Saucier*. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Additionally, Plaintiff–Appellant's expert's opinion further states that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that Mr. DeMerrell posed a significant threat of death or serious physical injury to the officer or others." (JA 430). This testimony also expresses a legal conclusion, going beyond "stating opinions that suggest the answer to the ultimate issue." *Berry*, 25 F.3d at 1353. Still other conclusions by Plaintiff–Appellant's expert were improper legal conclusions, namely that the "use of deadly force by [Officer White] was improper and unnecessary." See *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir.1992) (precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper").

206 F. App'x at 426-27. *See also United States v. Eberle*, No. 08-cr-20139, 2008 WL 4858438, at *1-3 (E.D. Mich. Nov. 10, 2008) (relying on *DeMerrell* and *Berry* to conclude that plaintiff's expert could testify about the continuum of force employed by officers generally, as well as the specific

14

training they receive and whether defendant's conduct violated those standards, but was precluded

"from expressing a legal conclusion or opinion as to the ultimate issue of whether Defendant's

conduct amounted to excessive force"); *Norman v. City of Lorain, Ohio*, No. 04-cv-913, 2006 WL

5249725 at *3 (N.D. Ohio Nov. 27, 2006) (citing *DeMerrell* and *Berry* and concluding that

plaintiff's expert could testify regarding proper police procedures to be followed in the situation that

faced the defendant but could not testify that the force used was unreasonable or unnecessary).

    Applying the principles and logic enunciated in these cases, it is clear that much of what Dr.

Lyman purports to testify to is impermissible expert testimony.[4]  As an initial matter, the Court

concludes that Dr. Lyman can testify about the Oakland County Sheriff's Department (OCSD)

policies and procedures, which include an escalating use of force matrix.[5]  In arguing that the

OCSD's policies and procedures are irrelevant to a determination of whether Deputy Simpkinson

used excessive force in arresting Plaintiff, Deputy Simpkinson relies on *Thompson v. City of*

---

[4] While the scope of his testimony must be significantly cabined, Dr. Lyman's qualifications seem adequate to permit him to testify on the use of excessive force.  In addition to his 12 years of service as a criminal investigator, he has trained new officers on the use of excessive force and served on numerous police officer discipline boards and is currently employed as a college professor of Criminal Justice, instructing in courses on proper police procedures, including the use of excessive force.  Deputy Simpkinson is free to explore Dr. Lyman's credentials at trial but they appear to the Court to meet the threshold requirements established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Dr. Lyman's credentials are similar to, though not quite as impressive as, those of the excessive force expert whom the Sixth Circuit found was qualified to testify in *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908-09 (6th Cir. 2004) (recognizing that "courts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact").

[5] The Court is aware, as defense counsel pointed out at oral argument in this matter, that "city policies do not determine constitutional law."  *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir. 1992).  To hold otherwise would penalize local law enforcement entities from attempting to adhere to stricter standards than those required by the Constitution.  *Id.*  However, the Sixth Circuit in *Smith* did not rule that such standards could not be considered by a fact finder, only that they cannot be understood to define the constitutional boundaries by which an officer's conduct is to be judged.

*Chicago*, 472 F.3d 444 (7th Cir. 2006). In *Thompson*, the Seventh Circuit upheld the district court's decision to exclude the Chicago Police Department's General Orders on the use of force, finding that the CPD General Orders, which state that they are merely intended to provide general guidance to officers on the reasonableness of certain responses, "shed[] no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." 472 F.3d at 454.

Deputy Simpkinson's argument fails to acknowledge that, notwithstanding the concern expressed by the *Thompson* court as to the CPD General Orders, the court in *Thompson* did not denounce the trial court's admission of extensive "testimony concerning the CPD's policies and procedures [which] were ubiquitous during the proceedings." *Id*. at 455-56. The court noted that officers "testified at length concerning the CPD's use of force guidelines and answered a number of questions regarding what use of force would have been authorized in a situation like the one the [defendants] encountered with [plaintiff]." *Id*. at 456. Without discussing the basis for its distinction between the CPD "General Orders" and the CPD "Policies and Procedures," the court nonetheless affirmed the district court's decision to permit extensive discussion of the latter.

Cases such as *Eberle* and *Norman*, which interpret applicable Sixth Circuit law, indicate that expert testimony regarding recognized police policies and procedures, and specifically continuum of force policies, are appropriate subjects of expert testimony, provided that the experts do not express legal conclusions based on their interpretation of the application of those policies in a particular case. Similarly, in *Champion*, *supra*, the Sixth Circuit countenanced expert testimony on the continuum of force guidelines as reflected in nationally recognized police standards. The Court concludes that Dr. Lyman may testify regarding nationally recognized police standards governing

16

the use of excessive force, as well as the specific OCSD excessive force guidelines to which Deputy
Simpkinson was subject.

Dr. Lyman will not be permitted, either by his report or his testimony at trial, to opine as to
whether Deputy Simpkinson's conduct in arresting Plaintiff was unreasonable under those guidelines
or practices. It may be helpful to the jury, for example, to know that Oakland County Deputies are
expected to escalate the use of force along a certain a continuum under a certain given set of
circumstances.  But whether or not Deputy Simpkinson's conduct in this case was unreasonable
given those guidelines is a decision that only the jury is competent to make.  Accordingly, Dr.
Lyman will be prohibited from expressing any legal conclusions, which either explicitly or
implicitly embrace the ultimate legal issue in this case of whether Deputy Simpkinson's conduct was
reasonable under the totality of the circumstances which he faced.  Specifically, Dr. Lyman is
prohibited from expressing the following opinions that appear in his report:

- That the applicable "standard of care" to be applied in this case was enunciated by the Court in *Graham v. Connor*, 490 U.S. 396 (1989). Instructing the jury on the law is role of the judge, not the expert.

- That "the level of force used by Deputy Micky Simpkinson against Joseph Alvarado in removing him from his vehicle was excessive, unnecessary and served no objectively reasonable purpose."  This is an opinion as to the ultimate legal conclusion called for in this case and is impermissible expert testimony.

- That "there was no reasonable belief on the part of Simpkinson that either occupant of the vehicle was dangerous or otherwise posing a threat."  This is simply unhelpful to the jury and also states a legal conclusion regarding the reasonableness of Deputy Simpkinson's belief.

- That "Simpkinson's actions in failing to allow Alvarado a reasonable amount of time to exit the vehicle on his own are more consistent with an officer who is acting punitively than one acting in an objectively reasonable fashion."

- That "based on the departmental use of force matrix provided to me in this

17

case, the grabbing of Alvarado was excessive and unnecessary at the time because it appears as though no reasonable effort was made by Simpkinson to ask Alvarado to exit his vehicle."

•   That "there was no need for Simpkinson to grab Alvarado and remove him from his vehicle without first waiting only seconds for backup officers to assist."  This statement appears to be unrelated to any of the policies or practices on which Dr. Lyman relies.

•   That "it is [his] opinion, stated within a reasonable degree of professional certainty, considering Alvarado's low if non-existent levels of resistance, that the actions in which [sic] Deputy Simpkinson used to remove him from his vehicle, under the circumstances known to Simpkinson at the time, were excessive, unnecessary and served no legitimate law enforcement purpose. As such, Simpkinson's actions were inconsistent with nationally recognized standards of care, professional policing guidelines and failed to be objectively reasonable."

The Court will permit Dr. Lyman to testify on the use of excessive force but will be vigilant in precluding him for expressing opinions that embrace the actual legal conclusion that the jury is asked to decide in this case, i.e. whether Deputy Simpkinson's conduct in effecting Plaintiff's arrest on the evening in question was unreasonable under the totality of circumstances known to him at the time.  Dr. Lyman will be permitted to reference nationally accepted police practices regarding the use of excessive force, as well as the OCSD's policies and procedures regarding the use of excessive force.  Deputy Simpkinson, on the other hand, will be able to testify that he was never investigated or disciplined for the conduct in question and will be free to explain his interpretation of the police practices and policies about which Dr. Lyman intends to opine.  Dr. Lyman will be precluded, however, from expressing any opinion as to whether Deputy Simpkinson's conduct was reasonable in light of those policies and guidelines.  Deputy Simpkinson will be free to attack on cross-examination both Dr. Lyman's qualifications to render his opinions as well as the allegedly outdated nature of the materials on which he relies.  Such matters go to the weight of Dr. Lyman's

18

testimony, not its admissibility.[6]

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS PART AND DENIES IN PART Plaintiff's Motion to Exclude Evidence (Dkt. No. 39), GRANTS IN PART AND DENIES IN PART Defendants' Motion to Preclude Dr. Lyman's Opinions at Trial (Dkt. No. 57) and DEFERS RULING on Defendants' Motion to Preclude Dr. Sase's Opinions at Trial (Dkt. No. 46).

IT IS SO ORDERED.


S/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 15, 2011




CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 15, 2011.


S/Denise Goodine_____
Case Manager

---

[6]  Dr. Lyman will not be permitted to testify in any respect regarding the OCSD's failure to train. This claim was dismissed on summary judgment and any testimony on this issue will be excluded if proffered.

19